UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

Carolyn Lopez,                                     O R D E R
                              Plaintiff,           05-CV-3624
                                                   (ARR)(KAM)

        -against-

The City of New York,

                              Defendant.
-----------------------------------------------------------------X

MATSUMOTO, United States Magistrate Judge:

            Pending before the court is a request dated February 15, 2007 from defendant

City of New York for an order precluding plaintiff from offering the testimony of witness

Anthony Kirby, pursuant to 28 U.S.C. § 1927 and Rules 26, 30 and 37 of the Federal Rules of

Civil Procedure.  (*See* docket no. 50, City's Motion to Preclude, dated February 15, 2007

("City's Motion"), at 1.)  On February 16, 2007, Plaintiff filed a Response in Opposition.  (*See*

doc. no. 52, Plaintiff's Letter in Opposition ("Pl's Opp.")).  Pursuant to this court's order of

April 13, 2007, plaintiff submitted Affirmations of Derek S. Sells, Esq. and Gerard A. Lucciola,

Esq., and an Affirmation of plaintiff Carolyn Lopez, on April 30, 2007, in further support of its

opposition to the City's motion.  (*See* doc. no. 58, Affidavits of Sells and Lucciola and

Affirmation of Lopez, dated 4/30/07.)   The City responded on May 17, 2007.  (*See* doc. no. 60,

Letter filed by defendant, dated 5/17/07.)  For the reasons set forth herein, the court hereby

denies the City's motion to preclude Mr. Kirby's testimony, orders Mr. Kirby to appear for a

third deposition, and strikes those portions of his March 20, 2006 deposition testimony which

violated his Sixth Amendment right to counsel.

## PROCEDURAL BACKGROUND

Plaintiff in this action, Carolyn Lopez, individually and as administrator of the estate of her son, Carlos Lopez, seeks damages pursuant to 42 U.S.C. § 1983 and the common law claims of negligence and respondeat superior for the alleged wrongful death of her son. (*See* doc. no. 1, Verified Complaint, dated August 1, 2005, at Counts I-VII.) Plaintiff alleges that on the afternoon of May 1, 2003, New York City police officers, after hearing gunshots, misidentified Carlos Lopez as the shooter of victim James Hodges, shot Lopez without probable cause, and thereafter refused to provide Lopez with emergency medical treatment before he died of his wounds. (*Id.* at ¶¶ 1-2.)

Plaintiff sought and obtained this court's order for the deposition of Anthony Kirby and, on March 20, 2006, the parties traveled to Sing Sing Correctional Facility, where Mr. Kirby had been transferred from Mt. McGregor Correctional Facility. (*See* doc. no. 50 at 2; doc. no. 41 at 7.) Because the Kirby deposition occurred early in discovery, the parties agreed that "[s]hould new information arise relating to this Witness, . . . either one of [the parties] could order his deposition again in order to ask him additional questions." (Doc. no. 50, Exh. B, 3/20/06 Deposition Transcript of Anthony Kirby ("3/20/06 Kirby Dep. Tr."), at 5.) Mr. Kirby was "first duly sworn by notary public of the State of New York. . . ." (*Id.* at 4.) Plaintiff's counsel, Derek Sells, Esq., introduced himself, explained that he represented Carolyn Lopez in a suit on behalf of her son, and asked that Mr. Kirby "answer the questions fully." (*Id.* at 4-5.) Mr. Kirby agreed. (*See id.* at 5.) Mr. Kirby then testified that "Twin" (also known as Jemel or Jamar Veazy, *see id.* at 8:18-22) recruited him to help kill James Hodge (*id.* at 9-10, 16-18), and that on May 1, 2003, Mr. Kirby stood lookout as Twin entered 685 Gates Avenue to kill Mr.

Hodge.  (*Id.* at 19, 23, 57.)  Under questioning by the City, Mr. Kirby testified as follows:

> Q:     [by counsel for the City, Alan Scheiner, Esq.] And [Twin] said to you – I think your words were, he said "I'm about to end the dude's life?"
> A:     Exactly.
>
> . . . .
>
> Q:     [by Mr. Scheiner] You knew that [Twin] was going in there to kill this other man, right?
> A:     From that point on, yeah.  Right when, when I got to the corner [to stand lookout], I knew what he was about to do.  I didn't run and none of that.  I didn't know what the hell he was going to do to me.  I stood that [sic] I actually watched him go inside the building.  I was standing right there on the corner.

(*Id.* at 50, 57-58.)

Mr. Kirby further testified that he observed Carlos Lopez standing across the street from him, on the east side of Marcus Garvey Boulevard, approximately half a block south, in front of a street vendor.  (*Id.* at 85.)  After Mr. Kirby heard gunshots from the lobby of 685 Gates Avenue, he stated that he ran around the block, came back and observed Lopez "laid out on the floor."  (*Id.* at 21, 24.)  Mr. Kirby then witnessed a police officer drag Lopez west across Marcus Garvey Boulevard to a bus stop.  (*See id.* at 77-80, 83, 85.)  Mr. Kirby further testified that Twin and Lopez were wearing "the same outfit . . . . [Lopez] had some black and red DKNY jeans, black and red Fila sneakers," and Twin was wearing "black sweats, DKNY, the black and red DKNY, . . . with black sneakers and a hoodie."  (*Id.* at 20, 64-65.)

The day after Mr. Kirby's March 20, 2006 deposition, Mr. Kirby was interviewed by two investigators for the Civilian Complaint Review Board ("CCRB").  (*See* doc. no. 50, Exh. E, CCRB Interview of Anthony Kirby, dated 3/21/06.)   At the interview, Mr. Kirby again explained that Twin "wanted me to watch out and see if any cops was gonna coming," and that

after he heard gunshots, he ran around the block and returned to see "Carlos laying down on the floor, with his head down." (*Id.* at 5-6 and 22, 28.) A detective "grabbed Carlos, and dragged him across the street . . . turned him around, handcuffed him, and put his knee in his back," and refused an off-duty ambulance driver's requests to administer emergency medical aid. (*Id.* at 7-8.) Mr. Kirby also stated that Lopez was originally standing by the bus stop. (*Id.* at 7.)

After plaintiff produced Mr. Kirby's CCRB testimony, the City requested that Mr. Kirby again be transferred to Sing Sing State Correctional Facility in order to testify at a second deposition regarding this "new information." (*See* doc. no. 41, Letter filed by defendant, dated 11/2/06.) Plaintiff objected to the City's request, stating, "[t]he only . . . 'new information' is a statement made by Mr. Kirby to the CCRB . . . While counsel alludes to 'other information' obtained in discovery, none of it relates to this non-party witness." (Doc. no. 42, Letter filed by plaintiff, dated 11/6/06, at 1.) In addition, plaintiff noted that Mr. Kirby "admitted to participation as a look-out in the shooting of James Hodge," and though he had not yet been charged in the Hodge murder, he could be as "there is no statute of limitations on murder under the New York State law." (*Id.*) Accordingly, plaintiff asserted that Mr. Kirby could, "if he wishes[,] refuse to answer any questions relating to the Hodge murder pleading the Fifth Amendment," and "should be advised of his right to an attorney." (*Id.* at 1-2.)

At a status conference on November 6, 2006, the court again ordered that Mr. Kirby appear for a deposition, and further ordered:

> The plaintiff requested that Mr. Kirby be advised that he may retain counsel, despite the fact that plaintiff did not previously so advise Mr. Kirby when he was deposed pursuant to plaintiff's subpoena . . . . The court . . . orders that defendants [sic] advise Mr. Kirby, by letter, that he may retain counsel to represent him at his deposition if he chooses to do so.

(Minute Entry, dated 11/6/06.)  The court specifically did not rule that Mr. Kirby had the right to be represented by counsel nor direct that he be advised of such right.

On February 15, 2007, the City moved this court for an order "precluding the testimony of plaintiff's witness, Anthony Kirby, from being offered by plaintiff at trial, on summary judgment, of for any other purpose . . . ."  (City's Motion at 1.)  The City contended that, at his second deposition, on December 12, 2006, Mr. Kirby "refused to answer questions . . . pursuant to instructions he was given the day before by the plaintiff in this action, Carolyn Lopez."  (*Id.*)  The City explained:

> After three preliminary questions, Mr. Kirby stated under oath that his "aunt" (the plaintiff, Carolyn Lopez) instructed him not to answer any of the City's questions unless "his lawyer," who he identified as the plaintiff's lawyer, Derek Sells, was present.  Kirby testified that the plaintiff "told me what to say" and that "her lawyer told her and she relayed it to me," on the telephone the evening before.  Kirby did not assert any right, constitutional or otherwise, in refusing to testify, and gave no reason other than the plaintiff's instructions.

(*Id.*, citing Exh. A, 12/12/06 Deposition Transcript of Anthony Kirby ("12/12/06 Kirby Dep. Tr."), at 4-7, 9, 10.)  At his December 12, 2006 deposition, Mr. Kirby testified:

> A:  My aunt told me I can't answer no questions or none of that.
> Q:  [by counsel for the City, Kathleen Kilduff, Esq.] Your aunt told you –
> A:  Carolyn Lopez.
> Q:  She told you what?
> A:  She said don't answer nothing.
> Q:  She told you not to answer anything?
> A:  Don't answer nothing because my lawyer is not here.
>
> . . . .
>
> Q:  Now, is it your – you are saying that today you refuse to answer any questions relating to Carlos Lopez?
> A:  Yes, that's what was told to me, and that is what I am addressing to you all.

| Q: | And who told it to you? |
|---|---|
| A: | My aunt and the lawyer. |
| Q: | Your aunt, Carolyn Lopez, the mother of Carlos Lopez, and what lawyer? |
| A: | Derek. |
| Q: | Derek Selles (ph)? |
| A: | Yeah. |

. . . .

| Q: | Did Carolyn Lopez instruct you not to testify unless Derek Selles was present? |
|---|---|
| A: | No, she didn't. She said don't answer no questions without your lawyer being here. |
| Q: | Without your lawyer. And did you understand that your lawyer for this deposition would be Derek Selles? |
| A: | Yes, yes, yes. |

(12/12/06 Kirby Dep. Tr. at 5, 8-9, 16.)

Accordingly, the City argued that plaintiff acted in bad faith by interfering with discovery, as "[p]laintiff's concern for Mr. Kirby's rights is not only belated, but belied by plaintiff's prior statements" in which plaintiff identified Mr. Kirby as "one of the shooters" to investigators from the CCRB. (*Id.* at 4 and Exh. C, CCRB Statement of Carolyn Lopez, dated 4/12/05, at 8.) Plaintiff's counsel, according to the City, are "deemed to have the same knowledge" as plaintiff herself, and thus knew that Mr. Kirby would incriminate himself. (*Id.* at 4.) The City further argued that Mr. Kirby's refusal to testify is without legal basis, and neither Mr. Kirby nor plaintiff asserted a legal theory for such refusal. (*See id.*) In addition, the City asserted, even though Mr. Kirby may have a potential right to assert a Fifth Amendment privilege in a future criminal proceeding, he has waived that right here by voluntarily testifying here. (*See id.* at 5.) Moreover, even if Mr. Kirby did not waive his Fifth Amendment privilege, his testimony should nevertheless be precluded because the City "has been denied cross-

examination regarding the central issues in this case." (*Id.*)

Plaintiff opposed plaintiff's motion to preclude on several bases. (*See* Pl's Opp. at 2-7.) First, plaintiff stated that the City had more than ample time to cross-examine Mr. Kirby, as the City questioned him for 144 pages out of the total deposition transcript of 170 pages. Indeed, plaintiff claimed, "this cross-examination by the City's lawyer . . . included questioning about other pending criminal cases for which Mr. Kirby had retained counsel. Mr. Kirby confessed to his involvement in those open cases as well." (*Id.* at 2, citing 3/20/06 Kirby Dep. Tr. at 135-140.) Plaintiff's counsel, Derek Sells, Esq., stated that he cautioned the City, off the record, to "refrain from that line of questioning outside the presence of Mr. Kirby's retained counsel," and that "[a]t no time, including the deposition of March 20, 2006, did I advise Mr. Kirby to refuse answering questions on any basis." (*Id.*, citing 3/20/06 Kirby Dep. Tr. at 139.)

Second, Mr. Sells stated that he "never had a conversation with Anthony Kirby other than asking him questions at a deposition," and has not spoken to him since the March 20, 2006 deposition. (Pl's Opp. at 2.) Mr. Sells also noted that although Mr. Kirby testified that he met with a lawyer named Derek Sells about the events of May 1, 2003, when the City pointed to Mr. Sells at the March 20, 2006 deposition, Mr. Kirby denied that Mr. Sells was that lawyer. (*Id.*, citing 12/12/06 Kirby Dep. Tr. at 114-117.) Moreover, Mr. Sells asserted that Carolyn Lopez instructed Mr. Kirby that he had a right to counsel per this court's November 6, 2006 order. (*See id.* at 3.)

Third, plaintiff noted that Mr. Kirby never unequivocally refused to testify, but only that he would not do so without his lawyer present. (*See id.*) Indeed, Mr. Kirby "has not invoked his right against self-incrimination nor has he been advised by anyone that he has such a

right." (*Id.* at 4.)  In addition, plaintiff claimed, circuitously, that the City could not possibly

believe that plaintiff has obstructed litigation as the City recently re-subpoenaed Mr. Kirby for

documents.

The parties appeared for a status conference on April 13, 2007.  The court

ordered:

> Based on discussions at the conference regarding defendants' motion
> to preclude testimony obtained by plaintiff from Mr. Kirby at his first
> deposition, the court ordered sworn statements by 4/30/07 from
> plaintiff and her counsel regarding whether they ever discussed with
> Mr. Kirby his Fifth Amendment right against self-incrimination, and,
> if so, the date(s) and the nature of the discussion.

(Minute Entry, dated 4/13/07.)

Accordingly, on April 30, 2007, plaintiff submitted the Affirmations of Derek S.

Sells, Esq. and Gerard A. Lucciola, Esq., and an Affidavit of plaintiff Carolyn Lopez.  (*See* doc.

no. 58.)  Mr. Sells stated:

> I did not ever discuss with Mr. Kirby his Fifth Amendment Right
> against self incrimination. . . . At the Kirby deposition of March 20,
> 2006, I suggested to Assistant Corporation Counsel Alan Scheiner,
> that he not ask Mr. Kirby any questions about the open pending
> robbery case on which Mr. Kirby was represented by counsel for fear
> that the questions being posed may violate his Sixth Amendment Right
> to counsel.

(*Id.*)  Likewise, Mr. Lucciola stated, "I never met nor did I ever discuss with Mr. Kirby his Fifth

Amendment Right against self incrimination at any time prior to his March 20, 2006 deposition

or any other time."  (*Id.*)  Plaintiff Carolyn Lopez also affirmed, "I did not discuss with Anthony

Kirby his right against self incrimination before his March 20, 2006 deposition," however, she

did not deny that she advised Mr. Kirby not to testify without counsel.  (*Id.*)  The court ordered

the City to "respond to plaintiff's 4/30/07 affidavits and advise the court whether it intends to

proceed with non-party Anthony Kirby's deposition." (Order dated 5/9/07.)

The City duly responded and renewed its request that "plaintiff be precluded from using Mr. Kirby's testimony in any fashion in this case, in light of plaintiff's opportunistic conduct in taking his testimony, and then interfering with the City's cross-examination at the later deposition by counseling the witness to refuse to testify." (Doc. no. 60, Letter filed by defendant, dated 5/17/07, at 2.) The City further stated that, should the court deny the City's request to preclude, the City would seek to re-depose Mr. Kirby. (*See id.*) Despite plaintiff and plaintiff's counsels' affirmation to the contrary, the City nevertheless maintained that "plaintiff herself instructed Mr. Kirby to refuse to answer any questions at the deposition in the absence of "his attorney," who, the City the claimed, Mr. Kirby identified as an individual named Derek Sells. (*Id.*) The City also noted that plaintiff's statement to the CCRB identifying Mr. Kirby as "one of the shooters," indicated that "she was fully aware that Mr. Kirby was likely to incriminate himself . . . ." (*Id.*, citing City's Motion, Exh. C at 8.)

On July 17, 2007, the City reiterated that it would seek to depose Mr. Kirby, notwithstanding the impending fact discovery deadline, if the court denied its request for preclusion. (*See* doc. no. 70, Letter filed by defendant, dated 7/17/07.)

Having reviewed the above submissions, and for the reasons set forth below, the court denies without prejudice the City's motion to preclude Mr. Kirby's prior testimony, orders Mr. Kirby to appear for and testify at another deposition, having waived his Fifth Amendment right against self-incrimination in this matter, and strikes those portions of Mr. Kirby's March 20, 2006 deposition testimony which violated his Sixth Amendment right to counsel.

## DISCUSSION

### A.    *Fifth Amendment Right Against Self-Incrimination*

As an initial matter, the court recognizes that "neither plaintiff nor Mr. Kirby has asserted a legal theory to justify [his] refusal" to testify. (City's Motion at 4.) The City, however, noted that Mr. Kirby "may have a potential right to assert a Fifth Amendment privilege on the matter in another case," and argued that he has waived that right here. (*Id.* at 5.) Accordingly, the court first addresses whether Mr. Kirby may assert such a Fifth Amendment right in refusing to testify.

The Fifth Amendment provides, "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. amend. V. "The Supreme Court stated long ago that 'the basic purposes that lie behind the privilege against self-incrimination do not relate to protecting the innocent from conviction, but rather to preserving the integrity of a judicial system in which even the guilty are not to be convicted unless the prosecution shoulder the entire load.'" *In re Three Grand Jury Subpoenas Duces Tecum Dated January 29, 1999*, 191 F.3d 173, 183 (2d Cir. 1999) (citing *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 415 (1966) (internal quotation marks omitted)). Judge Learned Hand further cautioned, however, that "the privilege is to suppress the truth, but that does not mean that it is a privilege to garble it . . . ." *United States v. St. Pierre*, 132 F.2d 837, 840 (2d Cir. 1942), *cert. dismissed*, 319 U.S. 41 (1943).

"An individual may invoke the Fifth Amendment to decline to answer a deposition question when the individual has reasonable cause to apprehend that answering the question will provide the government with evidence to fuel a criminal prosecution." *Osrecovery,*

*Inc. v. One Group Int'l, Inc.*, 262 F. Supp. 2d 302, 306 (S.D.N.Y. 2003). The witness must timely invoke the privilege: "[t]he time for a witness to protect himself is when the decision is first presented to him; he needs nothing more, and anything more puts a mischievous instrument at his disposal." *St. Pierre*, 132 F.2d at 840; *see also Klein*, 667 F.R.D. at 288.

A witness may waive the privilege himself, or a court may infer such a waiver. "[I]f the witness himself elects to waive his privilege, he may doubtless do so, since the privilege is for his protection and not for that of other parties . . . ." *Brown v. Walker*, 161 U.S. 591 (1896). A court may also, "in appropriate cases, . . . infer [a waiver] from a witness' prior statements with respect to the subject matter of the case, without any inquiry into whether the witness, when he made the statements, actually knew of the existence of the privilege and consciously chose to waive it." *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir. 1981). Such a waiver, however, "is not to be lightly inferred," *Smith v. United States*, 337 U.S. 137 (1949), and courts should keep in mind the Supreme Court's "oft-repeated admonition that the courts must 'indulge every reasonable presumption against waiver of fundamental constitutional rights.'" *Emspak v. U.S.*, 349 U.S. 190, 198 (1955) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *see also, e.g., Smith*, 337 U.S. at 150 (1949).

Courts may infer a fifth amendment waiver from a witness' prior statements if "(1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver . . . ." *Klein*, 667 F.2d at 287. The first prong derives from the Second Circuit's decision in *St. Pierre*, which held that the privilege "should not furnish one side with what may be false evidence and deprive the other of

any means of detecting the imposition." *St. Pierre*, 132 F.2d at 840; *see also Rogers v. United States*, 340 U.S. 367, 373 (1951) (holding that petitioner, by failing to assert the privilege when first presented with a potentially incriminating question, could not later assert the privilege to "avoid disclosure of the details,"and finding, "[t]o uphold the claim of privilege in this case would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony").

The second prong, whether the witness had reason to know that his prior statements would be interpreted as a waiver, is met

> only if the witness' prior statements were (a) "testimonial," meaning that they were voluntarily made under oath in the context of the same judicial proceeding, . . . and (b) "incriminating," meaning that they did not merely deal with matters 'collateral' to the events surrounding the commission of the crime, . . . but directly inculpated the witness on the charges at issue.

*Klein*, 667 F.2d at 288 (internal citations omitted). Therefore, "[w]here a witness has made statements that were both 'testimonial' and 'incriminating,'. . . [the] statements will likely influence the finder of fact . . . [and] contain information that the witness was privileged not to reveal." *Id.* Because such a witness "plainly has reason to know . . . that these statements may be interpreted as a waiver of his fifth amendment privilege against self-incrimination . . . [the witness] is not treated unfairly . . . if a court ultimately interprets the statements in this fashion." *Id.*

When a witness waives his fifth amendment right against self-incrimination and is subsequently recalled to testify,

> the trial judge *must* . . . direct the witness to testify, if necessary under penalty of contempt. . . . If the witness thereafter continues to refuse to testify, and if the refusal precludes the defendant from testing the truth

> of the witness' prior testimony, the trial judge *must* strike the prior
> testimony.

*Id.* at 289 (emphasis added); *see also Brown v. United States*, 356 U.S. 148, 154-57 (1958)

(finding that the petitioner waived her Fifth Amendment right because "by her direct testimony

she had opened herself to cross-examination on the matters relevantly raised by that testimony");

*Bagby v. Kuhlman*, 932 F.2d 131, 135 (2d Cir. 1991) ("If the privilege is deemed to have been

waived, the court should compel the witness to respond to the defense's cross-examination.  On

the other hand, if the privilege has not been waived, or if the witness simply refuses to testify,

the witness' direct testimony should be stricken in whole or in part."); *United States v. Cardillo*,

316 F.2d 606, 611 (2d Cir. 1963) (finding that the trial court did not err in refusing to strike a

witness's testimony because the testimony related to matters purely collateral to the case at

issue), *cert. denied*, 375 U.S. 822 (1963).

      In *Klein*, defendants Klein and Rabinowitz were charged with the crime of murder

in the first degree, to which Rabinowitz pled guilty for a reduced charge of manslaughter in the

first degree.  *See id.* at 279.  At Klein's trial, Rabinowitz, "asserting no constitutional privilege,

testified that he . . . had held [the victim] while Klein had stabbed her."  *Id.*  Immediately

thereafter, when Rabinowitz was taken back to the detention area, he told Klein's attorney that,

"under pressure from the district attorney, he had lied on the stand.  Rabinowitz stated that he,

and not Klein, had actually killed [the victim]."  *Id.*  Klein's attorney immediately notified the

judge and prosecutor, and Rabinowitz's attorney was called.  *See id.* at 279-280.  After

Rabinowitz was recalled to the stand, the judge informed him that he had a right to remain silent,

and when Rabinowitz invoked the Fifth Amendment's privilege against self incrimination and

refused to answer questions posed by Klein's counsel, the judge "allowed Rabinowitz to assert

the privilege . . . . [and] did not strike Rabinowitz's earlier testimony on the subject." *Id.* The

Second Circuit found that Rabinowitz had waived his Fifth Amendment privilege against self

incrimination. *See id.* at 288-289. The court held,

> [I]t is clear that both prongs [of testimonial waiver] are satisfied with
> respect to Rabinowitz's testimony when he first took the stand. . . .
> [H]is prior testimony, which was devastating to Klein's case, had
> created a significant likelihood that the jury had been left with, and
> prone to rely on, a distorted view of the truth.

*Id.* at 289. In terms of the second prong, the court found,

> Since the misleading statements were made while Rabinowitz was
> testifying under oath during a criminal trial, and since these statements
> incriminated Rabinowitz with respect to the crimes at issue,
> Rabinowitz certainly had reason to know that these statements would
> be interpreted as a waiver of his fifth amendment privilege against
> self-incrimination.

*Id.* at 288-289. The court therefore found "the trial judge's conduct indefensible" in failing to

direct Rabinowitz to answer questions upon being recalled to the stand, failing to threaten

Rabinowitz with being held in contempt once he refused to answer those questions, and,

thereafter, failing to strike Rabinowitz's earlier testimony. *See id.* at 289.

Similarly, in *Osrecovery*, the court likewise inferred that the witness waived his

Fifth Amendment right against self-incrimination. *See Osrecovery*, 262 F. Supp. 2d at 310.

Plaintiffs claimed that defendant Johnson and a number of entities controlled by him "carried out

a two-level scheme to defraud investors." *Id.* at 303. Johnson submitted an affidavit stating, "As

of the date this action was commenced, . . . I was not and have not since then been either an

employee, officer, director, or shareholder" of either of the companies allegedly engaged in the

scheme. *Id.* at 307. Thereafter, Johnson, citing his Fifth Amendment right against self-

incrimination, refused to answer questions at his deposition concerning his relationship with the

companies. The court found that the first prong in *Klein* was satisfied, as "if [the affidavit] was allowed to stand without cross-examination, [it] would be likely to leave the finder of fact with a 'distorted view of the truth'" regarding "a key issue in this case. . . ." *Id.* at 309. The court also found that the second prong in *Klein* was satisfied because Johnson had reason to know that his affidavit would effectuate a waiver. *See id.* The affidavit was "testimonial" because it was submitted under oath and "the deposition questions in response to which he invoked the Fifth Amendment occurred in the same judicial proceeding as the one in which he submitted his affidavit," and "incriminating" because it "(1) . . . was not on a collateral matter, and (2) inculpated the witness." *Id.* The court also noted that "the pivotal attribute of 'incriminating' testimony, as *Klein* used the word, is the witness's ability to have invoked the privilege, not whether the testimony given actually harmed the witness." *Id.* at 310.

Applying the *Klein* test to the testimony at issue, the court finds that Mr. Kirby waived his Fifth Amendment right against self-incrimination. The first prong of *Klein* is satisfied here because disallowing the City to further question Mr. Kirby would create "a significant likelihood that the finder of fact will be left with . . . a distorted view of the truth." *Klein*, 667 F.2d at 287. While the City was afforded ample time to cross-examine Mr. Kirby about his testimony at the March 20, 2006 deposition – indeed, the City examined him for more than eight-five percent of the deposition – the City nevertheless has been precluded from examining Mr. Kirby about arguably conflicting statements he subsequently gave to the CCRB investigators. (*See* doc. no. 41.)

Moreover, the parties agreed that "should new information arise relating to [Mr. Kirby]," either party could "order his deposition again to ask him additional questions."

(3/20/06 Kirby Dep. Tr. at 5.) Although the City does not specifically identify which of Mr. Kirby's statements to the CCRB present "new information," Mr. Kirby's knowledge of the events of May 1, 2003 are undeniably "a key issue in this case." Thus denying the City the opportunity to fully examine Mr. Kirby about those events would create an incomplete factual record on which the finder of fact will be "prone to rely. . . ," and result in prejudice to the City's defense. *Osrecovery*, 262 F. Supp. 2d at 309; *Klein*, 667 F.2d at 287; *cf. United States v. Calvente*, 722 F.2d 1019 (2d Cir. 1983) (finding "no prejudice to the appellants since [the witness] was fully cross-examined on the subject"); *Uni Supply, Inc. v. Government of Israel*, No. 92 Civ. 1489, 1993 WL 6204, at *2 (S.D.N.Y. Jan. 4, 1993) ("[Defendant] makes no claim that it will be prejudiced if [plaintiff] is not compelled to answer additional questions. . . ."); *Securities & Exch. Comm'n v. Cayman Islands Reinsurance Corp., Ltd.*, 551 F. Supp. 1056, 1058 (S.D.N.Y. 1982) (finding no waiver of Fifth Amendment right because the "court is at a loss to identify any prejudice since the statements made by [the defendant] amount to little more than a general denial of the SEC's allegations against him").

The court further finds that the second prong of *Klein* is met because Mr. Kirby "had reason to know that his prior statements would be interpreted as a waiver . . . ." *Klein*, 667 F.2d at 287. First, Mr. Kirby's statements at his March 20, 2006 deposition were "testimonial" because they were "voluntarily made under oath in the context of the same judicial proceeding" in which he now refuses to testify without a lawyer present. *Id.*; *see also Osrecovery*, 262 F. Supp. 2d at 309; *cf. Cayman Islands Reinsurance*, 551 F. Supp. at 1059 (finding that the statements were not "testimonial" because they were not made under oath). Second, Mr. Kirby's statements were also "incriminating" because they were "(1) . . . not on a collateral matter, and

(2) inculpated the witness." *Osrecovery*, 262 F. Supp. 2d at 309.  As the "pivotal attribute of 'incriminating'" is the witness' right to invoke the privilege, the court finds that Mr. Kirby undeniably had a right to invoke the privilege and refuse to answer questions about his involvement in the events of May 1, 2003.  *Osrecovery*, 26 F. Supp. 2d at 310.  Indeed, it is hard to imagine a more "incriminating" statement than admitting to acting as an accomplice to murder.

Although the court is concerned that plaintiff's opportunistic litigation strategy has placed an unrepresented, non-party witness in criminal jeopardy, the court notes that, applying the test followed in this circuit, Mr. Kirby "plainly [had] reason to know . . . that [his] statements may be interpreted as a waiver against self-incrimination, [and thus] is not treated unfairly . . . ." if the court infers such a waiver.  *Klein*, 667 F.2d at 288.  Therefore, because Mr. Kirby's statements have created a "significant likelihood that the finder of fact will be left with" an incomplete factual record, and were "testimonial" and "incriminating," the court finds that Mr. Kirby waived his Fifth Amendment privilege against self-incrimination.  *Id.*

Accordingly, following the dictates established by the Second Circuit in *Klein*, the court hereby directs Mr. Kirby to appear for another deposition.  *See id.* at 289.  Should Mr. Kirby thereafter specifically assert his Fifth Amendment privilege despite having waived it, and refuses to testify, the court will then strike his prior testimony.[1]  *See id.*; *see also Brown*, 356 U.S. at 154-57; *Bagby*, 932 F.2d at 135.

---

[1]   The court notes that, given Mr. Kirby's questionable financial resources and current incarceration, a certification of contempt and a recommendation that the district court impose a fine or incarceration would be unlikely to compel Mr. Kirby to testify further, and therefore preclusion would be the only effective remedy.  *See Klein*, 667 F.2d at 289.

**B.      Sixth Amendment Right to Counsel**

The City further argues that even if Mr. Kirby did not waive his Fifth Amendment privilege, his testimony should nevertheless be precluded because the City has been denied its right to cross-examine him based on newly-discovered evidence.  (*See* City's Motion at 5.)  In support of that proposition, the City relies on *Crawford v. Washington*, 541 U.S. 36, 68 (2004) and *United States v. Cardillo*, 316 F.2d 606, 613 (2d Cir. 1963), which held that testimony should be suppressed when a criminal defendant is unable to confront the testifying witness. *Crawford* and *Cardillo* both involve criminal cases in which a criminal defendant was denied his Sixth Amendment right to cross-examine witnesses.  *See Crawford*, 541 U.S. at 68 (reversing petitioner's criminal conviction because the court "admitted [a witness's] testimonial statement against petitioner, despite the fact that he had no opportunity to cross-examine her.  That alone is sufficient to make out a violation of the Sixth Amendment"); *Cardillo*, 316 F.3d at 610-11 (noting that "[t]he right of a defendant in federal court to confront the witnesses against him, guaranteed by the Sixth Amendment, includes the right to test the truth of those witness's testimony by cross-examination," and finding that a witness's refusal to testify on Fifth Amendment grounds did not violate that right as the testimony was collateral to the case)

The Sixth Amendment, however, applies only to criminal proceedings: "In all *criminal prosecutions*, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. CONST. amend. VI (emphasis added).  In this case, the City is not a defendant in a criminal proceeding, but rather, the defendant in a civil case, and as such, does not enjoy a Sixth Amendment right to confrontation.  *See Hannah v. Larche*, 363 U.S. 420, 440 n.16 (1960) (The protections afforded by the Sixth Amendment are "specifically limited to 'criminal

prosecutions'"); *see also Wolff v. McDonnell*, 418 U.S. 539, 567-68 (1974); *Dunbar v. Harris*, 612 F.2d 690, 692 (2d Cir.1979) ("The confrontation clause of the sixth amendment guarantees a criminal defendant the right to cross-examine witnesses against him.") (citing *Davis v. Alaska*, 415 U.S. 308, 315 (1974)); *Erbacci, Cerone, and Moriarty, Ltd. v. United States*, 939 F.Supp. 1045, 1056 (S.D.N.Y. 1996) (finding that there was no Sixth Amendment violation as "the Sixth Amendment only affords to a criminal defendant the right to confront his or her accuser and plaintiffs were not criminal defendants during the events at issue in the instant litigation.").

In addition to the criminal defendant's right to confront witnesses, the Sixth Amendment also provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Because the Sixth Amendment only applies to criminal proceedings, Mr. Kirby does not have a Sixth Amendment right to counsel in the context of this civil action. *See United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981) (noting that the Sixth Amendment does not apply to civil cases); *In re Yohannes*, No. 06 Civ. 461, 2007 WL 2034301, at *4 n.1 (S.D.N.Y. Jul. 17, 2007); *Brown v. Rhenquist*, 00 CV 7182, 2002 WL 32394848, at *7 (E.D.N.Y. May 1, 2002); *Samuels v. Stone*, No. 98 Civ. 776, 1999 WL 624549, at *4 (S.D.N.Y. Aug. 17, 1999); *Warden v. Pataki*, 35 F. Supp. 2d 354, 365 (S.D.N.Y. 1999) ("The Sixth Amendment right to counsel . . . applies only to "criminal prosecutions," and so it is not implicated here."), *aff'd*, 35 F. Supp. 2d 354 (2d Cir. 1999).

Axiomatically, Mr. Kirby does have a right to counsel in the context of criminal proceedings against him unrelated to the instant civil action. The right attaches when "the adversarial process has been initiated against a defendant 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *United States v. Siraj*, 424 F.

Supp. 2d 509, 518 (E.D.N.Y. 2006).

> [T]he Sixth Amendment right to counsel is offense specific. That is, while a defendant may have a Sixth Amendment right to counsel in a case where the adversarial process has been initiated against him, that right does not attach in an unrelated case in which the adversarial process had not been initiated.

*Id.* (citing *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)). In *Siraj*, for example, the court held that the defendant, who had a state misdemeanor charge pending against him, did not have a Sixth Amendment right to counsel for an unrelated federal crime for which he had not yet been charged. *See id.* at 518. The court drew a distinction between the Sixth Amendment and the Fifth, which "is not offense specific," noting, "[u]nlike the Sixth Amendment right to counsel, . . . once a defendant has invoked his right to counsel under the Fifth Amendment, he may not be questioned regarding ANY offense unless his counsel is present." *Id.* at 519 (citing *Arizona v. Roberson*, 486 U.S. 675 (1988)).

In this case, at the time of Mr. Kirby's first deposition, he had been formally charged with state offenses: (1) robbery in the first degree, assault in the second degree and grand larceny, for which he was represented (*see* 3/20/06 Kirby Dep. Tr. at 137-140); (2) possession of a gun, for which he was represented (*see id.* at 31, 136); and (3) possession of narcotics (*see id.* at 35). With respect to those crimes, the "adversarial process" had been initiated against Mr. Kirby and his Sixth Amendment right to counsel had attached by the time of his March 20, 2006 deposition. *See Siraj*, 424 F. Supp. 2d at 518; *McNeil*, 501 U.S. at 175; *United States v. Gouveia*, 467 U.S. 180, 188 (1984). On the other hand, Mr. Kirby's Sixth Amendment right to counsel did not attach with respect to the events of May 1, 2003, because "adversar[ial] judicial proceedings" had not been commenced against him. *McNeil*, 501 U.S. at

175; *see also Siraj*, 424 F. Supp. 2d at 518.

Accordingly, while the City's questioning Mr. Kirby about then-pending criminal charges did violate his Sixth Amendment right, questioning him about his knowledge of the events giving rise to this civil action did not violate his Sixth Amendment right. *See United States v. Duval*, 537 F.2d 15, 22 (2d Cir. 1976) (finding that the filing of a complaint does not give rise to a Sixth Amendment right to counsel even "upon arrest pursuant to warrant"); *United States v. Annucci*, No. 06 Cr. 982, 2007 WL 1310156, at *3 (S.D.N.Y. May 3, 2007) (no violation of Sixth Amendment right because, although defendant had been arrested, he had not yet been charged); *United States v. Reich*, No. 04 CR 257, 2005 WL 524553, at *3 (E.D.N.Y. Jan. 27, 2005) (same). The court therefore strikes those portions of Mr. Kirby's testimony touching upon crimes for which "adversarial proceedings have been initiated against" him, as enumerated above. *United States v. Smith*, 778 F.2d 925, 932 (2d Cir. 1985); *cf. United States v. Aparo*, 221 F. Supp. 2d 359, 368-69 (E.D.N.Y. 2002) (denying motion to suppress because defendant's Sixth Amendment right to counsel had not yet attached); *United States v. Taveras*, 995 F. Supp. 443, 449 (S.D.N.Y. 1998) (denying motion to suppress statements because there was no Sixth Amendment violation).

## C.    *Counsel for Plaintiff and the City have Unclean Hands*

Alternatively, the City asserted that Mr. Kirby's testimony should be precluded because "plaintiff's counsel has . . . shown opportunism and bad faith with respect to Mr. Kirby's deposition," by belatedly asserting Mr. Kirby's constitutional rights. (City's Motion at 4.) In support, the City cites Rules 30(d)(3) and 37(b)(2)(B) of the Federal Rules of Civil Procedure, which provide that a court may impose several sanctions on a party for violating

discovery rules, including "prohibiting that party from introducing designated matters into evidence."  Fed. R. Civ. P. 37(b)(2)(B).

As a preliminary matter, the court notes that plaintiff's counsel failed to inform Mr. Kirby of either his Fifth Amendment right against self incrimination, or provide him with an opportunity to testify with counsel, before Mr. Kirby's first deposition on March 20, 2006. Indeed, the only instruction plaintiff's counsel, Mr. Sells, offered to Mr. Kirby was a direction to "fully answer all the questions."  (3/20/06 Kirby Dep. Tr. at 5.)  And answer them he did; not only did Mr. Kirby buttress plaintiff's allegation that police officers shot and killed the wrong man, Mr. Kirby, in response to questions propounded by counsel for both parties, also admitted to being an accomplice to murder**.**  (*See id.* at 10, 13, 16-20, 23 and 50.)  He further: (1) admitted that he intended to deceive the Department of Corrections by giving corrections officers a false name (*see id.* at 26-27); (2) denied that he pled guilty to criminal possession of a weapon in the third degree (*see id.* at 135-136); and (3) in connection with pending charges of robbery in the first degree and assault in the second, admitted to committing grand larceny and being present when his co-defendant used a knife to commit robbery (*see id.* at 137-39).  Only after this series of confessions – almost 140 pages worth – did plaintiff's counsel object to the City's continued questioning.  (*See id.* at 139; *see also* doc. no. 58.)  Thereafter, solely in an effort to prevent the City from deposing Mr. Kirby a second time in contravention of the parties' agreement, plaintiff raised sudden concerns for Mr. Kirby's constitutional rights.  (*See* doc. no. 42 at 1-2.) Plaintiff's newfound concern is, to say the least, questionable.

At the same time, however, the City also demonstrated little concern for Mr. Kirby's rights – counsel for the City asked Mr. Kirby almost 144 pages worth of questions

regarding his role in Hodge's murder, and five pages worth of questions about then-pending criminal cases, without once advising Mr. Kirby of his Fifth or Sixth Amendment rights regarding pending criminal matters for which he is represented.  (*See* 3/20/06 Kirby Dep. Tr. at 1-139.)  In fact, the City only stopped questioning Mr. Kirby about open criminal cases after plaintiff's counsel objected (off the record).  (*See id.* at 139.)

Therefore, this court declines to award one counsel's misdeeds while punishing the other's.  *See Luzer GMBH v. American Showcase, Inc.*, 75 F. Supp. 2d 98, 102-3 (S.D.N.Y. 1998) (denying application for attorney's fees and noting the "endless sparring and protracted litigation by belligerent parties who . . . both . . . bear blame and . . . [finding that] neither party comes with clean hands").

Moreover, although Mr. Kirby testified that he spoke with a lawyer named "Derek Sells," he denied that plaintiff's attorney, Derek Sells, Esq., was that attorney.  (*See* 3/20/06 Kirby Dep. Tr. at 114-17.)  Plaintiff and plaintiff's counsel also affirmed under oath that they did not inform Mr. Kirby of his Fifth Amendment right against self-incrimination before his December 12, 2006 deposition, and Derek Sells affirmed that he did not speak with Mr. Kirby after the March 20, 2006 deposition.  (*See* doc. no. 58.)  Therefore, the court also declines to impose sanctions on plaintiff or her counsel when neither directed Mr. Kirby not to testify, but rather, informed him that he could appear with counsel pursuant to this court's November 6, 2006 order.

## **CONCLUSION**

Mr. Kirby waived his Fifth Amendment right against self-incrimination because his prior statements "have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth," and Mr. Kirby had "reason to know that his prior statements would be interpreted as a waiver" as they were both "testimonial" and "incriminating." *Klein*, 667 F.2d at 287-88. The court therefore orders Mr. Kirby to appear for a third deposition. *See id.* at 289. If, despite the waiver of his Fifth Amendment right, Mr. Kirby continues to refuse to testify, the court will order that his March 20, 2006 testimony be stricken. The court further finds that while Mr. Kirby does not have a Sixth Amendment right to counsel in the context of this civil proceeding, he does have such a right with respect to crimes for which the "adversarial process had been initiated against" him and may still be pending – namely, charges for robbery in the first degree, assault in the second degree, grand larceny, possession of a gun, and possession of narcotics. *Smith*, 778 F.2d at 932. The court therefore strikes Mr. Kirby's testimony with regard to those charges. Finally, the court declines to impose sanctions on counsel for plaintiff because both counsel for plaintiff and the City have opportunistically exploited Mr. Kirby's constitutional rights.

**SO ORDERED.**

Dated: July 31, 2007
        Brooklyn, New York

_____/s/_____
KIYO A. MATSUMOTO
United States Magistrate Judge