UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CAROLYN LOPEZ, individually and as Administratrix of the estate of CARLOS LOPEZ, deceased, | : | Case No: 05-CV-03624 (RML) |
| | : | |
| Plaintiff, | : | |
| | : | |
| - against - | : | |
| | : | |
| THE CITY OF NEW YORK, Detective ALFRED ROBINSON, Shield #6203 and "JOHN DOES" whose identities and numbers are presently unknown but who represent police officers and non-uniformed police employees of defendant CITY OF NEW YORK, both in their individual and official capacities, | : | |
| | : | |
| Defendants | : | |
| | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Dated: New York, New York
      October 14, 2011

Respectfully submitted,

s/ Paul Chin
Paul A. Chin, Esq. (PC 9656)
Derek Sells, Esq.
THE COCHRAN FIRM
The Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279
(212) 964-8030
*Attorneys for Plaintiff*

To:    Ira G. Greenberg, Esq.
       Zachary W. Silverman, Esq.
       Edwards Angell Palmer & Dodge LLP.
       750 Lexington Avenue, 8th Floor
       New York, NY 10022
       *Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………   3

PRELIMINARY STATEMENT …………………………………………...   5

STATEMENT OF FACTS …………………………………………………   6

LEGAL ARGUMENT ……………………………………………………..   10

POINT I        LEGAL STANDARD FOR SUMMARY JUDGMENT…..   10

POINT II       DEFENDANT CITY'S "SPECIAL DUTY OR SPECIAL
               RELATIONSHIP" DEFENSE IS INAPPLICABLE TO
               THE FACTS OF THIS CASE……………………………   11

POINT III      THE FACTUAL DISPUTES IN THIS CASE, REGARDING
               ISSUES OF IMMUNITY AND LIABILITY, REQUIRE
               RESOLUTION BY A JURY……………………………….   13

**A.**         Defendant City can be held liable, either vicariously or under
               the doctrine of *respondeat superior*, for Defendant Robinson's
               negligent and/or unreasonable conduct involving the shooting
               of an innocent bystander……………………………………   14

B.             The factual disputes in this case preclude summary judgment
               on the issue of negligence and immunity…………………….   17

CONCLUSION …………………………………………………………..   19

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)……………………………………………………….. 10

Arias v. City of New York,
22 A.D.3d 436, 802 N.Y.S.2d 209 (2nd Dept. 2005) …………………… 14

Bryant v. Maffucci,
923 F.2d 979(2nd Cir. 1991) …………………………………………… 10

Chen v. City of Syracuse,
2009 WL 529553 (N.D.N.Y. Mar. 2, 2009) ……………………………… 16

Cerbelli v. City of New York,
2008 WL 4449634 (E.D.N.Y. Oct. 1, 2008) ……………………………… 19

Cuffy v. City of New York,
69 N.Y.2d 255 (1987) ………………………………………………….. 11

Cusanelli v. New York City Transit Authority,
20 A.D.3d 319, 799 N.Y.S.2d 36 (1st Dept. 2005) ……………………… 16

McCummings v. NYC Transit Authority,
81 N.Y.2d 923 (1993) ………………………………………………….. 10, 17

Mon v. City of New York,
78 N.Y.2d 309 (1991). ………………………………………………….. 14

Lubeki v. City of New York,
304 A.D.2d 224, 758 N.Y.S.2d 610 (1st Dept. 1993) …………………… 10, 14, 15

Rodriguez v. City of New York,
189 A.D.2d 166, 595 N.Y.S.2d 421 (1st Dept. 1993) …………………… 12

Security Ins. Company of Hartford v. Old Dominion Freight Line, Inc.,
391 F.3d 77 (2nd Cir. 2004)……………………………………………… 10

Schuster v. City of New York,
5 N.Y.2d 75, 79 (1958)………………………………………………… 12

Sorichetti v. City of New York,
65 N.Y.2d 461 (1985)………………………………………………….. 11

Vann v. City of New York,
72 F.3d 1040 (2nd Cir. 1995) …………………………………………… 10

Velez v. City of New York,
157 A.D.2d 370, 556 N.Y.S.2d 537 (1st Dept. 1990) ……………………        12

Wilkes v. City of New York,
308 N.Y. 726 (1954)……………………………………………………….        16

Wu v. City of New York,
934 F.Supp 581 (S.D.N.Y. 1996)………………………………………….        13

**RULES**

Rule 56(c) of the Federal Rules of Civil Procedure

**STATUTES**

42 U.S.C. §1983

Plaintiff Carolyn Lopez, individually and as Administratrix of the estate of Carlos Lopez, deceased (hereinafter "Plaintiff"), by and through her undersigned attorneys, hereby submit this Memorandum of Law in Opposition to Defendant City of New York's (hereinafter "Defendant City") Motion for Summary Judgment (hereinafter "Defendant City's Motion").

## PRELIMINARY STATEMENT

On May 1, 2003, Carlos Lopez was an innocent by-stander when Detective Alfred Robinson (hereinafter "Defendant Robinson") negligently shot and killed Carlos while pursuing another individual Defendant Robinson believed to have been involved in a recent shooting at 685 Gates Avenue in Kings County.  Defendant City argues that it cannot be held liable for the shooting death of Carlos Lopez, caused by its employee (i.e. Defendant Robinson) while acting within the scope of his employment, because: (i) Plaintiff has failed to present any evidence of a "policy or custom" implemented or executed by the City of New York which proximately caused Carlos' death; and (ii) neither Defendant City nor Defendant Robinson had a "special duty" or relationship with Carlos Lopez sufficient to hold the City of New York liable under the doctrine of respondeat superior.  Defendant City's argument with respect to Plaintiff's so-called "Monell Claims" against it cannot be disputed and, as a result, Plaintiff will voluntarily dismiss its Section 1983 claims directly against Defendant City from its action, if any such claims exist in the First Amended Complaint.  However, the City's liability for Defendant Robinson's negligent acts against Carlos Lopez, committed within the scope of Defendant Robinson's employment, cannot be summarily dismissed as a matter of law.

Plaintiff's negligence claims (sounding in wrongful death and personal injury) are predicated on the theory that Defendant Robinson, in utilizing deadly physical force, did

not exercise the degree of care which would reasonably be required of police officers under similar circumstances and/or that Defendant Robinson acted in a manner contrary to acceptable police practice. Defendant City will be held liable for Defendant Robinson's negligent acts, under the doctrines of respondeat superior and/or vicarious liability, if the jury determines that Defendant Robinson acted unreasonably or outside acceptable police practices. Defendant City's claim of immunity on the grounds that no special duty or relationship existed between Defendant City/Defendant Robinson and Carlos Lopez is a red-herring because the "special duty/relationship" defense is limited to cases involving nonfeasance, and only applies in situations where the claim is that the police "failed to provide adequate police protection" to one citizen from the harmful or dangerous conduct of another individual. No such claim is made in this case.

This case is a straight forward negligence claim. Plaintiff's position is simple: Defendant Robinson, in pursuit of an individual he believed to be a suspect in a shooting, shot and killed Carlos Lopez, an innocent bystander who had not been involved in any criminal activity. Defendant Robinson's acts violated acceptable police practices, i.e. not to shoot at fleeing felons in the immediate vicinity of innocent bystanders, and were otherwise unreasonable and negligent.

For the foregoing reasons, Defendant City's Motion on immunity for Defendant Robinson's negligent acts should be denied in its entirety[1].

## STATEMENT OF FACTS

On or about May 1, 2003, a group of individuals, led by a man named Jamar Veazy a/k/a "Twin," entered an apartment building located at 685 Gates Avenue in Kings

---

[1] Plaintiff hereby dismisses her §1983 claims, i.e. "Monell Claims," directly against Defendant City, if any such claims or causes of action exist in the First Amended Complaint.

County.   *Dep. Anthony Kirby, March 20, 2006, at 18:19-19:21*[2].  In the lobby of this apartment building Jamar Veazy shot and killed an individual named James Hodge. Id. at 19:4-19:21, 57:17-58:7; 59:13-59:24.

Just before the shooting at 685 Gates Avenue occurred, Defendant Robinson and his partner, Detective John Pembelton (hereinafter "Detective Pembelton"), were in an unmarked mini-van stopped at a traffic light at the intersection of Marcus Garvey Boulevard and Gates Avenue.  While they were stopped at the traffic light at Gates Avenue, Defendant Robinson heard shots being fired.  *Dep. Alfred Robinson, Oct. 20, 2006, at 146:8-146:17*[3].  Defendant Robinson asked Detective Pembelton where the shots were coming from.  Id. at 147:24-148:6.  Detective Pembelton indicated to Defendant Robinson that the shots were coming from the building located at 685 Gates Avenue.  Id. at 148:4-148:15.  When Defendant Robinson looked in the direction of 685 Gates Avenue he saw an individual standing in the doorway to the building shooting at another individual.  Id. at 149:1-149:4.  Defendant Robinson stated that he did not see the "shooter's" face but saw that the shooter was wearing dark clothes and a hood.  Id. at 150:14-150:23. Prior to hearing the shots being fired from 685 Gates Avenue, Defendant Robinson saw people walking on Gates Avenue and Marcus Garvey Boulevard.  Id. at 156:8-156:13.  According to multiple eyewitnesses, at the time the shooting occurred Carlos Lopez was on Marcus Garvey Boulevard at or near the corner of Gates Avenue (County of Kings) talking to a street vendor and buying compact discs. *Dep. Anthony Kirby, March 20, 2006, at 20:14-20:19, 21:2-21:7, 61:2-61:5, 128:16-128:20; Dep.*

---

[2] The Deposition Transcript of Anthony Kirby is identified as Exhibit 1 in the Declaration of Paul A. Chin.
[3] The Deposition Transcript of Alfred Robinson, dated October 20, 2006, is identified as Exhibit 2 in the Declaration of Paul A. Chin.

*Sandra Britt, July 6, 2007, at 23:8-23:17, 26:18-27:4, 27:19-27:25[4]; Dep. Jessica Wright, May 22, 2007, at 164:5-164:21, 165:17-165:23, 173:6-173:22.[5]*

After observing the shooting, Defendant Robinson proceeded to drive West and crossed the intersection of Gates Avenue and Marcus Garvey Boulevard.  Id. at 154:16-154:24.  Eyewitnesses testified that after shots were fired they saw Jamar Veazy a/k/a "Twin" running out of the building at 685 Gates Avenue.  *Dep. Jessica Wright, May 22, 2007, at 166:1-166:15; Dep. Anthony Kirby, March 20, 2006, at 19:10-19:21, 20:9-20:12, 21:12-21:14, 59:4-59:24.*  Upon observing the individual wearing dark clothes and a hood cross Gates Avenue, Defendant Robinson attempted to exit his vehicle at the same time yelling "Police don't move."  *Dep. Alfred Robinson, October 20, 2006, at 168:15-168:24.*  Defendant Robinson, without exiting his vehicle, initially fired one shot at this individual which went through the glass window of the Top Ten Discount Store located at 644 Gates Avenue.  *See, Exhibit 7 (Bullet Casing Identified as "M3")[6].*  After the first shot was fired the individual wearing dark clothes and a hood ran south on Marcus Garvey Boulevard.  *Dep. Alfred Robinson, October 20, 2006, at 180:10-180:17.*  It is undisputed that Defendant Robinson and Detective Pembelton lost sight of this individual after he began to run down Marcus Garvey Boulevard.  Id. at 180:22-181:3; *Dep. Alfred Robinson, October 31, 2006, at 137:13-137:17[7]; Dep. Detective John*

---

[4] The Deposition Transcript of Sandra Britt is identified as Exhibit 3 in the Declaration of Paul A. Chin.
[5] The Deposition Transcript of Jessica Wright is identified as Exhibit 4 in the Declaration of Paul A. Chin.
[6] Exhibit 7 is attached to the Declaration of Paul A. Chin.
[7] The Deposition Transcript of Alfred Robinson, dated October 31, 2006, is identified as Exhibit 5 in the Declaration of Paul A. Chin.

*Pembelton, October 24, 2006, at 130:20-130:24, 131:14-131:19.*[8]  After losing sight of the individual, Defendant Robinson backed up his vehicle and proceeded south on Marcus Garvey Boulevard.  *Dep. Alfred Robinson, October 20, 2006, at 181:4-181:12.*  It is undisputed that Defendant Robinson fired a second shot from his service weapon, the casing for which was found in the middle of the road on Marcus Garvey Boulevard.  *See, Exhibit 7 (Bullet Casing Identified as "M4").* It is undisputed that Carlos Lopez was shot and killed by Defendant Robinson.  *Defendant City of New York's Rule 56.1 Statement at ¶5.*

It is undisputed that it is standard police practice that the use of deadly force is prohibited in instances where "the suspect is fleeing into a crowd not to fire if he is running away from you, then there is no imminent threat."  *Dep. Detective Pembelton, October 24, 2006,21:6-21:12.*  According to the City of New York Police Department Firearms Discharge Manual, the New York City Police Department Shooting Guidelines specifically state that:

> "Police officers shall not discharge their weapons when doing so will unnecessarily endanger innocent persons"
>
> "Police officers shall not discharge their firearms to subdue a fleeing felon who presents no threat of imminent death or serious physical injury to themselves or another person present."

*See, Exhibit 8 at pg. 7.*[9]

---

[8] The Deposition Transcript of Detective John Pembelton is identified as Exhibit 6 in the Declaration of Paul A. Chin.

[9] Exhibit 8 is attached to the Declaration of Paul A. Chin.

# LEGAL ARGUMENT

## POINT I
## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. Defendants bear the burden of demonstrating the absence of a material fact and their entitlement to relief as a matter of law. A fact is material if it "might affect the outcome of the suit under the governing law ..." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, the fundamental maxim is that the court cannot try issues of fact; it can only determine whether there are issues to be tried. Vann v. City of New York, 72 F.3d 1040, 1049 (2nd Cir. 1995) ("The drawing of inferences and the assessment of credibility of witnesses remain within the province of the jury."). In assessing whether or not a material fact is in dispute, the Court must believe the evidence presented by Plaintiff and must resolve all ambiguities and draw all reasonable factual inferences in Plaintiff's favor. Security Ins. Company of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2nd Cir. 2004) *citing* Anderson, 477 U.S. at 255. "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2nd Cir. 1991) *citing* Anderson, 477 U.S. at 250-251.

It should be noted that "…negligence cases by their very nature do not lend themselves to summary dismissal "since often, even if all parties are in agreement as to the underlying facts, the very question of negligence is itself a question for jury determination." McCummings v. NYC Transit Authority, 81 N.Y.2d 923, 925 (1993); Lubeki v. City of New York, 304 A.D.2d 224, 758 N.Y.S.2d 610, 616 (1st Dept. 1993)

("[B]ecause negligence claims usually present significant material factual disputes, they typically are not amenable to summary dismissal."

**POINT II**
**DEFENDANT CITY'S "SPECIAL DUTY/RELATIONSHIP" DEFENSE IS INAPPLICABLE TO THE FACTS OF THIS CASE**

In its Motion, Defendant City claims that it cannot be held liable for the shooting death of Carlos Lopez by Defendant Robinson because"[I]n order the for City to be liable for the negligence or recklessness of its employees, those employees' acts must be 'ministerial, as opposed to discretionary,' and furthermore, the City must have a special duty [or relationship] to the injured person, in contrast to the general duty owed to the public." *See, Defendant City's Memorandum of Law at pg. 4*. Defendant City's "special duty/relationship" defense is a red-herring and completely inapplicable to the facts of this case.

The "special duty/relationship" defense is only applicable in instances where a plaintiff claims that the police were negligent in protecting plaintiff from harm. In other words, the "special duty/relationship" defense is limited to cases involving nonfeasance, and only applies in situations where the claim is that the police "failed to provide adequate protection" to one citizen from the harmful or dangerous conduct of another individual. *See,* Cuffy v. City of New York, 69 N.Y.2d 255, 260 (1987)(landlord and sons injured in altercation with tenants brought suit against city for negligent failure to provide police protection where police officer promised plaintiff Cuffy "...that an arrest [of tenant] would be made or something else would be done about the situation first thing in the morning" but ultimately failed to fulfill promise to plaintiff); *see also* Sorichetti v. City of New York, 65 N.Y.2d 461, 463 (1985)("Plaintiffs' theory of recovery is that the City, through the New York City Police Department, negligently failed to take Frank

Sorichetti into custody or otherwise prevent his assault upon his daughter after being informed that he may have violated a Family Court order of protection and that he had threatened to do harm to the infant."); <u>Velez v. City of New York</u>, 157 A.D.2d 370, 556 N.Y.S.2d 537 (1st Dept. 1990) (decedent was shot and killed in her mother's apartment by her ex-boyfriend while in the escort of two New York City policemen; plaintiff brought action against defendant-City claiming that the police owed her a duty of protection against the shooter which the police were negligent in carrying out); <u>Rodriguez v. City of New York</u>, 189 A.D.2d 166, 172, 595 N.Y.S.2d 421, 425 (1st Dept. 1993) ("The "special relationship" doctrine applies in situations where the City is alleged to be liable for injuries caused by a third party non-employee, often a criminal, based on alleged failure by the City to provide police protection or perform some other governmental function."); <u>Schuster v. City of New York</u>, 5 N.Y.2d 75, 79 (1958) ("It is alleged that the city failed to exercise reasonable care in supplying Schuster with police protection upon demand, that Schuster's death was due to negligence of the city in recklessly exposing him to danger, in advising him that the threats upon his life were not seriously made, in failing to supply him with a bodyguard and in heedlessly imparting to him a false impression of safety and lack of danger.").

In this case, Plaintiff's action against Defendant City is based on a theory of vicarious liability for Defendant Robinson's act of negligently and/or wrongfully shooting Carlos Lopez. There has been no claim that Defendant Robinson failed to provide adequate police protection to Carlos Lopez or that some third-party killed him as a result of Defendant Robinson's negligent failure to provide adequate police protection. As a result, Plaintiff is not required to allege or present evidence of either: (i) the existence of a special duty/relationship between Defendant City/Defendant Robinson and

Carlos Lopez; or (ii) that Defendant Robinson's acts, which caused the death of Carlos Lopez, were ministerial as opposed to discretionary, in order to hold Defendant City vicariously liable for the negligent and/or tortuous acts of its employee (i.e. Defendant Robinson) committed during the scope of his employment. *See,* Wu v. City of New York, 934 F.Supp 581, 591-592 (S.D.N.Y. 1996) (defendant City could be held liable for state law claims against police officer for false arrest and imprisonment; and intentional infliction of emotional distress under a theory of respondeat superior liability for police officers actions).

## POINT III
## THE FACTUAL DISPUTES IN THIS CASE, REGARDING ISSUES OF IMMUNITY AND LIABILITY, REQUIRE RESOLUTION BY A JURY

Following the dismissal of Plaintiff's 42 U.S.C. §1983 claims directly against Defendant City, if any, one of the remaining causes of action against Defendant City will be pendent state law common law claims for negligence, recklessness (i.e. Counts Iv, V and VI of the First Amended Complaint) under the theory that Defendant City is liable (either vicariously liable or liable pursuant to the doctrine of *respondeat superior*) for the negligent and unreasonable acts of Defendant Robinson committed within the scope of his employment. It seems clear that under New York law Defendant City can be held liable for the negligent and tortuous acts committed by Defendant Robinson as alleged in the First Amended Complaint. However, the disputed facts in this case will require a jury to not only determine issues of negligence but whether or not the facts support Defendants' claim of governmental immunity.

A. **Defendant City can be held liable, either vicariously or under the doctrine of** *respondeat superior***, for Defendant Robinson's negligent and/or unreasonable conduct involving the shooting of an innocent bystander**

While municipal defendants are generally immune from liability for conduct which involves a police officer's exercise of his/her discretion and reasoned judgment[10]; a municipal defendant has no immunity when an innocent bystander is injured by police action resulting from the officer's unreasonable or excessive use of force or failure to follow established police guidelines governing the use of deadly force. Lubeki v. City of New York, 304 A.D.2d 224, 234, 758 N.Y.S.2d 610, 616 (1st Dept. 2003). Defendant City seeks to cloak itself with municipal immunity on the grounds that "…[a] municipal defendant is immune from liability for conduct involving the exercise of discretion and reasoned judgment and that this immunity extends to the actions of police officers engaged in law enforcement activities." *See, Defendant City's Memorandum of Law at pg. 4.* However, Defendant City's immunity argument is specious because it is wholly based on facts that inapposite to what happened here.

In support of its immunity argument Defendant City cites the Second Department's decision in the matter of Arias v. City of New York, 22 A.D.3d 436, 802 N.Y.S.2d 209 (2nd Dept. 2005). The plaintiff's action in *Arias* "…arose out of the death of Carmine Capone as a result of gunfire that erupted while he [Capone] was participating in an attempt to sell firearms illegally to undercover New York City police officers." Arias v. City of New York, 22 A.D.3d at 436, 802 N.Y.S.2d at 210. The Second Department determined that the trial court's decision denying the City/police officer defendants' motion for summary judgment should be reversed because:

---

[10] See, Mon v. City of New York, 78 N.Y.2d 309 (1991).

> "…defendants made a prima facie showing of entitlement to judgment as a matter of law by establishing that the acts that resulted in Capone's death were undertaken by the police officers in the exercise of their professional judgment. In response, the plaintiffs failed to raise a triable issue of fact. The record is bereft of evidence that, under the circumstances, the police officers' actions were inconsistent with acceptable police practice."

Id. at 22 A.D.3d at 437, 802 N.Y.S.2d at 211.  Unlike the plaintiff in *Arias* and contrary to Defendants' assertion in this case (i.e. that Carlos Lopez was the shooter who killed James Hodge inside the building located at 685 Gates Avenue), Carlos Lopez was not engaged in criminal activity at the time Defendant Robinson shot and killed him.  In fact, multiple eyewitnesses testified, at their respective depositions, that at the time the shooting occurred at 685 Gates Avenue Carlos Lopez was on Marcus Garvey Boulevard near the corner of Gates Avenue (County of Kings) talking to a street vendor and buying compact discs. *See, Dep. Anthony Kirby, March 20, 2006, at 20:14-20:19, 21:2-21:7, 61:2-61:5, 128:16-128:20; Dep. Sandra Britt, July 6, 2007, at 23:8-23:17, 26:18-27:4, 27:19-27:25; Dep. Jessica Wright, May 22, 2007, at 164:5-164:21, 165:17-165:23, 173:6-173:22.*  Therefore, the facts of this case are inapposite the facts of *Arias* and are on point with the facts in Lubeki v. City of New York, 304 A.D.2d 224, 234, 758 N.Y.S.2d 610, 616 (1st Dept. 2003).

*Lubeki* arose out of an incident in 1993 where a hostage was killed by officers from the New York City Police Department and Transit Authority Police Department who were pursuing bank robbery suspects.  Lubeki, 304 A.D.2d at 226, 758 N.Y.S.2d at 612.  "The parties stipulated that the third and fatal shot which struck and killed [decedent plaintiff] in the heart was fired by an NYPD officer's .38 caliber gun…" Id. at 304 A.D.2d at 230, 758 N.Y.S.2d at 614.  In affirming a jury's verdict finding the municipal defendants liable for the police officers conduct, the First Department

determined that the municipal immunity defense was inapplicable and the municipalities could be held vicariously liable for the police officers' negligence stating:

> "It must be recognized that this is a common law negligence case sounding in wrongful death and personal injury claims predicated on the theory that responding police officers, in utilizing deadly physical force, did not exercise the degree of care which would reasonably be required of police officers under similar circumstances."

Id. at 304 A.D.2d at 232, 758 N.Y.S.2d at 616.  The Court further went on to note that "[T]ypically, such a case presents sharp factual disputes not amenable to summary dismissal and the jury must determine the issue of liability."  Id.

It is beyond cavil that under New York law municipalities can be held liable, either under the doctrine of *respondeat superior* or vicarious liability, for the negligent acts of its employees, committed within the scope of their employment, that injure innocent bystanders.  *See,* Cusanelli v. New York City Transit Authority, 20 A.D.3d 319, 799 N.Y.S.2d 36, 37 (1st Dept. 2005) ("Bystander who was shot by police as alleged result of their use of excessive force during shooting incident brought action against city transit authority; appellate division affirmed judgment against all defendants); Wilkes v. City of New York, 308 N.Y. 726 (1954) (affirmed judgment finding city liable for injuries sustained by plaintiff who was struck by a bullet fired by city's police officer at third person whom the officer was attempting to arrest); Chen v. City of Syracuse, 06-CV-1143 (NPM), 2009 WL 529553 at *9 (N.D.N.Y. Mar. 2, 2009) ("…under New York law, municipalities may be vicariously liable for negligent acts and intentional torts of police officers.").

It is equally undisputed that under New York law, police officers, and their municipal employers, may be liable for negligently discharging a firearm if the police officer, acting within the scope of his employment, "did not exercise the degree of care

which would reasonably be required of them under similar circumstances." McCummings v. NYC Transit Authority, 81 N.Y.2d 923, 925 (1993)[11].   In this case, Plaintiff's evidence certainly raises a factual issue as to whether Defendant Robinson, in using deadly force to apprehend a fleeing suspect, on a street filled with innocent civilians, shot and killed Carlos Lopez: (i) exercised the degree of care which would reasonably be required under the circumstances; and/or (ii) violated acceptable police procedure.

**B.     The factual disputes in this case preclude summary judgment on the issue of negligence and immunity**

As previously discussed, while Defendant Robinson claims that he shot an individual (i.e. Carlos Lopez) he believed to have just committed a murder, eyewitnesses to the shooting testified that at the time the shooting occurred Carlos Lopez was talking to a street vendor purchasing compact discs. *See, Dep. Anthony Kirby, March 20, 2006, at 20:14-20:19, 21:2-21:7, 61:2-61:5, 128:16-128:20; Dep. Sandra Britt, July 6, 2007, at 23:8-23:17, 26:18-27:4, 27:19-27:25; Dep. Jessica Wright, May 22, 2007, at 164:5-164:21, 165:17-165:23, 173:6-173:22.*   It is undisputed that in his pursuit of the individual shooter leaving the building located at 685 Gates Avenue, both Defendant Robinson and Detective Pembelton lost sight of this individual as he turned the block and ran south on Marcus Garvey Boulevard.   *Dep. Alfred Robinson, October 20, 2006,*180:22-181:13; *Dep. Alfred Robinson, October 31, 2006, at 137:13-137:17; Dep. Detective John Pembelton, October 24, 2006, at 130:20-130:24, 131:14-131:19.* Contrary to Defendant Robinson's claim that he fired two shots at the individual shooter

---

[11] In *McCummings*, plaintiff brought action against police officers and NYC Transit Authority claiming that he was unarmed and running away from the scene of an attempted robbery when he was shot in the back by a NYC Transit Authority Officer.

while he was stopped at a traffic light on Gates Avenue, the forensic evidence suggests that Defendant Robinson fired one of the two shots somewhere on Marcus Garvey Boulevard near where Carlos Lopez was shot and killed. *Exhibit 7(Bullets identified as M3 and M4).*

Given this evidence, a jury question is presented: Whether, on the one hand, Defendant Robinson, and ultimately Defendant City, was negligent in shooting an innocent bystander or whether Defendant Robinson was justified in his shooting of Carlos Lopez.

Plaintiff's version of the facts from sworn testimony and evidence is as follows: (i) Carlos Lopez had nothing to do with the shooting which occurred at 685 Gates Avenue; (ii) Jamar Veazy a/k/a "Twin" shot and killed James Hodge in the building located at 685 Gates Avenue; (iii) while a homicide was being committed in the building located at 685 Gates Avenue, Carlos Lopez was on Marcus Garvey Boulevard, near Gates Avenue, purchasing compact discs from a street vendor; (iv) Defendant Robinson fired one shot at the individual leaving the scene of the shooting at 685 Gates Avenue and this shot missed and broke the glass window of the Top Ten Discount Store located at 644 Gates Avenue; (v) Defendant Robinson, after backing up his vehicle to chase the suspect who ran around the corner onto Marcus Garvey Boulevard, lost sight of this individual; and (vi) as he went down Marcus Garvey Boulevard fired a second shot at Carlos Lopez.  The jury could also find for the Plaintiff it determines that determine that Defendant Robinson fired at a fleeing suspect in contravention of accepted police practices/guidelines.  *See, Exhibit 8 at pg. 7.*

As has been previously discussed, negligence claims "usually present significant material factual disputes, they typically are not amenable to summary dismissal.  <u>Lubeki</u>,

304 A.D.2d at 224, 758 N.Y.S.2d at 616.  Ultimately, this case is a common law negligence case sounding in wrongful death and personal injury.  Defendant City will be liable for the shooting death of Carlos Lopez under a theory of *respondeat superior* or vicarious liability if the jury determines that Defendant Robinson, in using deadly physical force, did not exercise the degree of care which would reasonably be required of police officers in similar circumstances or violated usual police practice.  McCummings, 81 N.Y.2d at 925.  The ultimate question of negligence, in such cases, must be left for the jury.  Id. at 926 ("It is settled that negligence cases by their very nature do not lend themselves to summary dismissal since often, even if all parties are in agreement as to the underlying facts, the very question of negligence is itself a question for jury determination.").

With respect to issues of the existence or absence of governmental immunity, this Court has previously determined that such decisions must be left to a jury because genuine disputes of material fact make it impossible to determine if the police officers acted reasonably or within accepted police practices.  Cerbelli v. City of New York, 99-CV-6846 (ARR)(RML), 2008 WL 4449634 at *12 (E.D.N.Y. Oct. 1, 2008) ("…the existence of a genuine issue of material fact precludes the court from granting summary judgment on the basis of qualified immunity…").

## CONCLUSION

For the reasons stated herein, Defendant City's Motion should be denied in its entirety[12].

---

[12] Plaintiff hereby dismisses her §1983 Claims, i.e. "Monell Claims," directly against Defendant City, if any such claims or causes of action exist in the First Amended Complaint.

Dated: New York, New York
      October 14, 2011

                                   Respectfully submitted,
                                        s/ Paul Chin

Paul A. Chin, Esq. (PC9656)
Derek Sells, Esq.
THE COCHRAN FIRM
The Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279
(212) 964-8030
*Attorneys for Plaintiff*

To:     Ira G. Greenberg, Esq.
        Zachary W. Silverman, Esq.
        Edwards Angell Palmer & Dodge LLP.
        750 Lexington Avenue, 8th Floor
        New York, NY 10022
        *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

On the 14th day of October, 2011, a true and correct copy of PLAINTIFF'S

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CITY OF NEW

YORK'S MOTION FOR SUMMARY JUDGMENT was served via the U.S. District

Court for the Eastern District of New York's electronic court filing system ("ECF") and

via first-class mail to the following the attorneys representing the Defendants:

>       Ira G. Greenberg, Esq.
>       Zachary W. Silverman, Esq.
>       Edwards Angell Palmer & Dodge LLP.
>       750 Lexington Avenue, 8th Floor
>       New York, NY 10022
>       *Attorneys for Defendants*


<u>      10/14/11      </u>                              <u>             s/             </u>
Date                                                 Paul A. Chin, Esq. (PC 9656)
                                                     THE COCHRAN FIRM
                                                     233 Broadway, 5th Floor
                                                     New York, NY 10279
                                                     (212) 553-9000
                                                     *Attorneys Plaintiff*